R. B. MAGRUDER, ADMINISTRATOR, Defendant in Error, *v.* B. F. ADMIRE ET AL., Plaintiffs in Error.

### June 5, 1877.

1. Plaintiff alleged in his petition that defendant and others, as principals, and plaintiff's intestate, as surety, executed a note in favor of B., who obtained judgment against all the obligors, and that by virtue of execution issued thereon plaintiff's intestate was compelled to pay the judgment; that the other principals are dead, and their estates insolvent; and prayed judgment for the sum thus paid. Defendant denied. Plaintiff replied, alleging that the undertaking of defendant was that of a co-surety, not of a principal., *Held,* that this was a departure, and the reply should have been stricken out on motion.

2. In an action for contribution by a surety against one of several co-sureties the measure of defendant's liability is controlled by the number of his co-sureties who remain solvent.

3. A surety's right of action against a co-surety does not accrue until he has paid in excess of his proportionate share of liability.

ERROR to Lincoln Circuit Court.

*Reversed and remanded.*

NORTON & MARTIN, for plaintiffs in error: The reply should have been stricken out. — Wag. Stat. 1017, sec. 15; 1 Chitty's Pl. 643–645; *Suman* v. *Inman*, 3 Mo. App. 596.

P. P. STEWART, for defendant in error : Liability of a
có-surety, and the measure of damages.—Wag. Stat. 1303,
1304, secs. 5–8 ; *Labaume* v. *Sweeney*, 17 Mo. 153 ; *Dodd* v.
*Winn*, 27 Mo. 501.    When the liability of a surety to a co-
surety accrues. — *Singleton* v. *Townsend*, 45 Mo. 379.

LEWIS, P. J., delivered the opinion of the court.

This is a suit brought by plaintiff, as administrator of the
estate of Lassena Skinner, deceased, against Joshua W.
Sitton, Andrew J. Williams, and Benjamin F. Admire.
The petition alleges that, in November, 1858, the defend-
ants, together with Samuel Matthews and James Admire,
as principals, and the plaintiff's intestate, as surety, exe-
cuted a promissory note in favor of Levi Bailey for $500,
payable twelve months after date, with interest at ten per
cent from date ; that in March, 1861, Bailey obtained
a judgment against all the obligors in the note, for $573.71 ;
that sundry executions were issued successively on this
judgment, so that, on August 10, 1870, plaintiff's
intestate was compelled to pay, and did pay, the whole
sum then due on the execution, which, with sundry
sums previously paid by her, amounted to $1,127.94 ; that
the said Samuel Matthews and James Admire are long
since dead, and their estates were insolvent.    Plaintiff asks
judgment for the whole sum so paid by his intestate, with
interest at ten per cent from the date of her payment.

The defendant Benjamin F. Admire filed a separate an-
swer, in which he puts in issue many of the plaintiff's alle-
gations, and " denies that he signed said note as one of the
principal debtors, but says, to the contrary, that he was but
a security to said note, and signed it as security, not receiv-
ing any benefit therefor."    The plaintiff filed a reply, in
which he says " it is true that said defendant did sign the
note as a security thereon, and was not a principal debtor
in said note."    He then alleges that " this suit has long
been dismissed as to Joshua W. Sitton and A. J. Williams,

and that all the obligors in said note are insolvent, and a suit against them for the amount paid by Lassena Skinner would be unavailing." He therefore "prays that he have judgment against Benjamin F. Admire for one-half the amount paid by deceased, viz., the sum of five hundred and sixty-three dollars and eighty-five cents," etc. The defendant moved to strike out this reply, because it set up a new cause of action, and because suit had been dismissed as to Sitton and Williams. The court refused to pass upon this motion, and, neither sustaining nor overruling it, went into the trial upon the pleadings as they stood. The court, sitting as a jury, found for the plaintiff, and rendered judgment against the defendant for $767.65, with interest at ten per cent per annum.

The cause of action stated in the petition was upon the implied joint and several undertaking entered into by the defendant as a principal, with other principals, that if the plaintiff's intestate, as a surety, should pay off, voluntarily or otherwise, the obligation in which all were bound, he would reimburse her in the whole sum so paid. The cause of action set up in the reply was a sole undertaking by defendant as a surety, only, that if the plaintiff's intestate, as a co-surety, should be compelled to pay an amount in excess of her proportionate share of liability, he would reimburse her to the extent of his own proportionate liability under the common obligation. Here are brought into view two distinct forms of legal responsibility, different in origin, in parties, in contingent terms of enforcement, and in possible extent of recovery. Upon which did plaintiff intend to recover? Against which was defendant called upon to prepare his defence? If a plaintiff may so shift his ground between petition and reply, the statute which makes the reply the last pleading will cut off the defendant from any response to the claim for recovery latest on the record. The reply in this instance was a clear case of departure in pleading, and the Circuit Court committed error in refusing to

strike it out. It was inconsistent with the petition. Wag. Stat. 1017, sec. 15; *Suman* v. *Inman*, 3 Mo. App. 596.

As the cause must be sent back, some other features will be remarked upon, by way of guidance for a future trial.

The bill of exceptions purports to contain all the testimony introduced on either side. Yet nothing therein appears touching the alleged and controverted insolvency of the original co-obligors with the plaintiff's intestate and the defendant. This would be immaterial if the action proceeded upon the grounds stated in the petition. But if the plaintiff relied upon the cause of action set up in the reply, the case was very different. This illustrates yet more forcibly the irregularity admitted into the pleadings. If the reply was to govern, the measure of defendant's liability would be controlled by the number of his co-sureties who remained solvent. The court appears to have assumed his responsibility as a surety, and yet, without proof to that effect, made the actual insolvency of all the other obligors the basis of his liability to the plaintiff. Wag. Stat. 1304, secs. 7, 8; *Dodd* v. *Winn*, 27 Mo. 503.

The testimony tended to show that in March, 1868, A. P. Stuart purchased from plaintiff's intestate a tract of land for $2,400, receiving a general warranty deed; that the intestate then owed Stuart $300, which was treated as part of the purchase-money; that Stuart afterwards conveyed part of the land to Joel Crenshaw, for a consideration paid to the intestate, and in August, 1870, paid to Levi Bailey $516, taking from him an assignment of his judgment, above mentioned, against the intestate and others. In this way, according to Stuart's testimony, he settled for all the purchase-money. It further appeared that, some time in 1868, Bailey caused the same land to be sold under his judgment, purchased it himself, and obtained a sheriff's deed. Afterwards he instituted suit against plaintiff's intestate and Stuart, to effect a cancellation of the deed which had passed between them, as fraudulent and void. Pending this suit,

Stuart paid him the $516, whereupon he assigned his judgment to Stuart, and gave him a quitclaim deed of the land. This payment of $516 constitutes the essential ground of plaintiff's claim to reimbursement from the defendant as one of the parties bound by the judgment.

If all the facts which were necessary to plaintiff's right of recovery on account of Stuart's payment to Bailey were proved at the trial, they were not made to appear in the bill of exceptions. If Stuart's payment was voluntary, and was never expressly ratified or adopted by Mrs. Skinner, and was not necessary in order to protect the title which she had warranted to him, or was not made under circumstances which would give him a right to resist her demand of so much of the purchase-money unpaid, then there was no right in the plaintiff to treat the payment as having been made by his intestate, and to insist on reimbursement. Yet all or any of these conditions are consistent with the evidence preserved in the record. It would appear from the dates given that, when Mrs. Skinner conveyed to Stuart, the lien of the judgment on her land had expired. This view is confirmed by the fact of Bailey's suit to set aside the conveyance, which would have been needless if the lien had been kept alive by revival. Stuart's title, then, was assured by his deed, and he had no need to protect it against Bailey. Mrs. Skinner could refuse to recognize his payment to Bailey, and demand her balance due, if any, of the purchase-money. On the other hand, if Bailey's judgment lien remained good, he acquired the absolute title by his deed from the sheriff. When, therefore, Stuart obtained a quitclaim deed from Bailey, he acquired a title which was independent of Mrs. Skinner's warranty. That warranty had failed, and she held no claim upon him at any time. Stuart's payment to Bailey was, therefore, in no sense a payment by or for her, but was an element of a distinct purchase, in which she had no interest. In addition to this, Stuart had now become the holder

of a judgment against Mrs. Skinner, and, for aught that appears, might have enforced its collection as thoroughly as Bailey, his assignor, could have done.   How, then, could it be said that she had, in the same transaction, paid and satisfied that judgment?   It cannot be assumed that, as between her and Stuart, the judgment was already satisfied in her conveyance of the land to him ; because, upon the facts supposed, that conveyance was valueless.

In this discussion no account is taken of a supposed fraudulent collusion between Mrs. Skinner and Stuart to defeat her creditors.   There does not appear any direct evidence of such collusion, and it cannot be presumed from any thing in the record.   If it were proved, however, no advantage therefrom could accrue to the plaintiff in this controversy.   The law would not permit him to make advantage of his intestate's wrong-doing.   Her conveyance and warranty must, for the purposes of this case, be considered as valid and effectual against herself.

The foregoing considerations are not here presented by way of deciding in advance upon the merits of the cause, as they may appear in another trial.   The plaintiff may be able to show such facts as will entitle him to a recovery, within the principles here declared.   He may have shown more of such facts at the former trial than were preserved in the bill of exceptions.   But the general treatment of the cause, in the giving and refusing of instructions, would lead us to infer that the most material elements of the controversy considered in this opinion were overlooked by the court below.

As to the statute of limitations, the court rightly declared, in effect, the rule to be that a surety's right of action against a co-surety does not accrue until he has paid in excess of his proportionate share of liability.   *Daveis* v. *Humphreys*, 6 Mee. & W. 153 ; *Lytle* v. *Pope*, 11 B. Mon. 297.

All the judges concurring, the judgment is reversed and the cause remanded.